# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Gregory Sysyn and Harriet Sysyn,

                  Plaintiffs,      Case No. 1:18-cv-03089

v.                                 Michael L. Brown
                                 United States District Judge

DKB Household USA Corp., and
Sur La Table, Inc.,

                  Defendants.

_____/

## ORDER

Plaintiff Harriet Sysyn cut her thumbs while using a kitchen tool for cutting mangos. Plaintiff sued the product's vendor, Defendant Sur La Table, Inc. ("SLT"), and the product's designer, Defendant DKB Household USA Corp. ("DKB"). Defendants moved for summary judgment. (Dkts. 59; 79.) The Court grants their respective motions. Plaintiff moved for sanctions against Defendant DKB. (Dkt. 82.) The Court denies that motion.

## I.  Background

Plaintiff bought a Zyliss Mango Splitter (the "Mango Splitter") from Defendant SLT.  (Dkt. 79-3 ¶ 9.)  The Mango Splitter consists of two blades attached to two plastic handles.  (Dkt. 72-1 ¶ 2.)  A user presses down on the handles to push the blades into and through a mango.  (*Id.*) The warning label, which Plaintiff read before using the Mango Splitter, stated, "Caution sharp blades, handle with care."  (*Id.* ¶ 6.)  The packaging also stated, "Micro serrated stainless steel blades, slices through mango cleanly with minimal waste."  (*Id.* ¶ 10.)

Plaintiff used the Mango Splitter the day after she bought it.  (Dkt. 79-3 ¶ 10.)  While doing so, a mango pit got stuck in the Mango Splitter. (*Id.* ¶ 12.)  To get the pit out, Plaintiff flipped the Mango Splitter over, pointing the blades upward towards herself.  (Dkt. 72-1 ¶ 8.) She directed her thumbs toward the blades.  (Dkt. 83-1 ¶ 16.)  Seeking to remove the pit, she pressed down with her thumbs into the blades.  (Dkt. 61-1 at 91:15–18.)  She severed the connective tissue in her thumbs.  (Dkt. 72-1 ¶ 11.)

Plaintiff sued Defendants alleging (1) strict liability for negligent design and failure to warn; (2) negligence for design, failure to warn, and

hiring; and (3) breach of the implied warranty of merchantability.  She seeks compensatory damages and punitive damages.  Plaintiff's husband, Dr. Gregory Sysyn, asserts a claim for loss of consortium.

## II.   Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'"  *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986)).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial responsibility of asserting the basis for its motion.  *Celotex*, 477 U.S. at 323.  The movant is not,

however, required to negate the nonmovant's claim. *Id.* at 324. Instead, the moving party may meet her burden by " 'showing' — that is, pointing to the district court — that there is an absence of evidence to support the non-moving party's case." *Id.* After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.*

The court must view all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

## III.  Products Liability Standards Under Georgia Law

Plaintiff asserts three theories of recovery: strict liability, negligence, and breach of warranty. *See Ogletree v. Navistar Int'l Transp. Corp.*, 390 S.E.2d 61, 65 (Ga. Ct. App. 1989) ("An action in products liability may proceed on one or a combination of theories of negligence, strict liability, or breach of warranty."). For negligence and strict liability, the "*sine qua non* of a products liability claim . . . is a defect in

4

the product." *Boswell v. Overhead Door Corp.*, 664 S.E.2d 262, 263 (Ga. Ct. App. 2008).

The Georgia Supreme Court has held that Georgia Code Annotated section 51-1-11 imposes strict liability for defective products. *Ctr. Chem. Co. v. Parzini*, 218 S.E.2d 580, 582 (Ga. 1975). To establish strict liability, a plaintiff must show the defendant's product, when sold, was "not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." GA. CODE ANN. § 51-1-11(b)(1); *see Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 672 (Ga. 1994) (stating "OCGA § 51-1-11 imposes strict liability for defective products"). A plaintiff may base a strict liability claim on one of three categories: manufacturing, design, or marketing/packaging. *See Banks*, 450 S.E.2d at 672. For each theory of liability, the core questions are the same: "whether a product was defective, and if so, whether the defect was the proximate cause of a plaintiff's injury." *Varazo v. Keiser Corp.*, No. 1:16-cv-4228, 2018 WL 2938871, at *3 (N.D. Ga. June 12, 2018) (quoting *S K Hand Tool Corp. v. Lowman*, 479 S.E.2d 103, 106 (Ga. Ct. App. 1996)).

The elements of negligence are "(1) a legal duty to conform to a standard of conduct . . . ; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage from the breach." *Davis v. Blockbuster, Inc.*, 575 S.E.2d 1, 2 (Ga. Ct. App. 2002). "Because a manufacturer is not an insurer that its product is, from a design viewpoint, incapable of producing injury, a plaintiff must prove a defect and that the defect was the proximate cause of his injury." *Varazo,* 2018 WL 2938871, at *3 (quoting *Banks*, 450 S.E. at 674). So, both her strict liability claim and her negligence claim require Plaintiff to show a defective design.

## IV.   Discussion

### A.    Defective Design

Plaintiff argues the Mango Splitter is defectively designed  because its serrated blades are sharper than a consumer would expect and because DKB designed it for smaller mangos, giving it a propensity for American mango pits, which are larger than European mango pits, to get stuck in its blades.  (Dkt. 83 at 11–15.)   "[A] product design is defective if the risks inherent in a product design outweigh the utility or benefit derived from the product." *In re Mentor Corp. ObTape Transoburator*

6

*Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1364 (M.D. Ga. 2010.)  To make this determination, Georgia uses a loose risk-utility test that considers:

> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance.

*Banks*, 450 S.E.2d at 673.  The essential inquiry is "whether the design chosen [by the manufacturer] was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware." *Id.*

The Mango Splitter was not defectively designed.  The Mango Splitter was designed to be sharp.  It must be sharp enough to cut through the fruit.  It would be unreasonable to find a kitchen blade defective merely because of its sharpness.  In fact, the Georgia Court of Appeals has said that a knife's sharpness is a danger a consumer should foresee.  *See Stovall & Co. v. Tate*, 184 S.E.2d 834, 838 (Ga. 1971) ("A

manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of such common dangers.").

The Court also rejects Plaintiff's argument that the shape of the blades was a product defect. The risk is that some, larger mango pits might get stuck and need to be removed. On the other hand, the purpose of the product is to cut fruit from the pit — minimizing the loss of fruit. The danger is similar to the danger one faces that a knife might get stuck in a mango pit. And, of course, the slicer must be sharp enough to slice, leading to the possibility of someone getting cut while removing a stuck pit from the blade. Put simply, one cannot have a slicer without blades, blades may get stuck, and someone may be injured clearing the blades. That risk does not outweigh the very purpose of the product.

Plaintiff also presented no expert testimony suggesting a safer, alternative design was feasible and that the manufacturer should have been aware of that alternative design — a necessary element of Plaintiff's design defect claim. *See Haynes v. Cyberonics, Inc.*, No. 1:09-cv-2700, 2011 WL 3903238, at *5 (N.D. Ga. Sept. 6, 2011) ("[E]xpert testimony is almost always needed to apply the risk/utility standard for design defects

under Georgia law."); *Mize v. HJC Corp.*, No. 1:03-cv-2397, 2006 WL 2639477, at *4 (N.D. Ga. Sept. 13, 2006) ("[E]xpert testimony is often required to measure the 'gravity and severity of the danger' posed by a product, the likelihood of that danger, and whether there are feasible alternative designs that would eliminate danger 'without impairing the usefulness of the product or making it too expensive.' " (quoting *Banks*, 430 S.E. at 675.)).

Plaintiff argues she does not need expert testimony to establish a design defect here.  She cites *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1320 (11th Cir. 2011), where the Eleventh Circuit explained that expert testimony is not required when lay testimony gives "rise to reasonable inferences that a jury could draw the presence of defects." That case discussed two other cases in which Georgia courts excused plaintiffs' failure to provide expert testimony to establish a defect: (1) a new vehicle that ran with a loud rattling noise and (2) the rupture of a penile implant.  The Eleventh Circuit noted that expert testimony was unnecessary in those cases as a lay person could testify that a new vehicle should not have a loud rattling noise and a penile implant should not rupture one month after implantation.  Those cases, however, involved

allegations of a manufacturing defect — that is, that the produce did not perform as intended.  The Court of Appeals thus recognized that some items behave so far outside their expected performance that lay testimony (as opposed to expert testimony) is sufficient.

This case is very different.  That the Mango Splitter cut Plaintiff's thumbs is not so far outside its intended use (to cut) that a defect was obvious.  Moreover, this case involves an alleged design defect, not a manufacturing defect, such that the failure of the product to perform could be self-evident.  A Mango Splitter is intended to be sharp and to be shaped in a way that it cuts fruit from pit.  A layperson could not distinguish the impact on the product's utility gained through adjusting the shape of the Mango Splitter's blades.  A layperson also could not distinguish when a blade's sharpness goes from useful to overly sharp and unreasonably dangerous.  Plaintiff claims it should have been designed to perform better with American mangos and that it was too sharp.  But Plaintiff provides no expert testimony to support that allegation, to discuss alternative designs to accommodate American mangos, to address whether those designs might impact the usefulness of the slicer on European mangos, to offer an opinion as to the necessary

sharpness of the blades to perform properly, to suggest the blades were somehow too sharp, or to address any other factors set out in the *Banks* risk-utility test.

The Court understands a layperson could appreciate the danger of cutting oneself.  But Plaintiff provided no expert evidence to suggest the design of the blades (that is, their sharpness and shape) fail the *Banks* test and from which a jury could conclude the Mango Splitter was defectively designed.  Defendants are entitled to summary judgment on Plaintiff's strict liability and negligent design defect claims.

## B.    Failure to Warn

To establish a failure to warn claim, a plaintiff must prove (1) the defendant had a duty to warn the plaintiff; (2) the defendant breached its duty; (3) the alleged breach caused the plaintiff's injury.  *See Varazo v. Keiser Corp.,* 2018 WL 2938871, at *4.  The duty to warn arises when the designer knows or should reasonably know of a danger arising from the product's use.  *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999).  When considering this danger, the Court should consider the foreseeability of the use in question, the type of danger involved, and the

foreseeability of the user's knowledge in question. *See Ziegler v. CloWhite Co.*, 507 S.E.2d 182, 185 (Ga. Ct. App. 1998).

Applying these factors, the Court finds Defendants had no duty to warn Plaintiff of the Mango Splitter's blades or its shape. Plaintiff knew the Mango Splitter's blades were sharp. The danger involved, cutting oneself, is the same danger as the danger with a kitchen knife and does not establish a duty to warn. And the injury was also not foreseeable, as Defendants could not have foreseen that a Mango Splitter user would press her thumbs towards the product's blades.

Plaintiff argues these blades were particularly sharp. But the blades were supposed to be sharp — courts use a knife's sharpness as the example of an obvious danger. *See Stovall*, 184 S.E.2d at 838; *Batts v. Tow-Motor Forklift Co.*, 978 F.2d 1386, 1393 (5th Cir. 1992) ("[A]n ordinary kitchen knife is dangerous, simply because of its blade; but it is not unreasonably dangerous, because the ordinary consumer understands that the blade, due to its sharpness or point, can cause injury.").

Plaintiff also argues Defendants had a duty to warn of pits getting stuck in the Mango Splitter. Plaintiff's injury, however, came from

pressing her thumbs towards blades she knew to be sharp, a danger she should have foreseen.  Pitts getting stuck was not the danger that led to Plaintiff's injury.  It was her actions to remove the pit that caused the injury.  The Court finds Defendant DKB had no duty to warn Mango Splitter purchasers of the blade's sharpness or of mango pits getting stuck in the Mango Splitter.[1]

### C.    Implied Warranty of Merchantability

The implied warranty of merchantability of the goods means the goods "are fit for the ordinary purposes for which such goods are used."  GA. CODE ANN. § 11-2-314.   The implied warranty of merchantability does not protect from a defect "discoverable by the exercise of caution on the part of the purchaser."  *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 561 (Ga. 1996).

The Mango Splitter did not have any defects undiscoverable with the use of caution.  For the same reasons Defendants did not have a duty to warn Mango Splitter purchasers of the Mango Splitter's blades'

---

[1] Defendant SLT moved to exclude Plaintiff's experts.  (Dkt. 64.)  Given the Court's findings, that motion is moot.

sharpness or of the shape of the blades, the Court grants Defendants summary judgment on the implied warranty claim.

### D.   Negligent Hiring

Plaintiff also alleged Defendant SLT was "negligent in hiring, supervising, and training engineers and representatives to design, test, and label the product." (Dkt. 1-1 ¶ 108.)  Since the Court finds the Mango Splitter not defective, the Court rejects this claim.

### E.   Remaining Claims: Loss of Consortium, Attorneys' Fees, and Punitive Damages

Plaintiff's husband claims loss of consortium.  This claim depends on liability in other claims.  *See White v. Hubbard*, 416 S.E.2d 568, 569 (Ga. Ct. App. 1992) (finding "[a] spouse's right of action for the loss of the other's society or consortium is a derivative one, stemming from the right of the other").  As do Plaintiff's claims for attorneys' fees and punitive damages.  *See Johnson v. Johnson*, 747 S.E.2d 518, 523 (Ga. Ct. App. 2013).  Since the Court grants Defendants summary judgment on the substantive claims, these ancillary claims fail.

### F.   Motion for Sanctions (Dkt. 82)

Plaintiff claims Defendant DKB's responses to Plaintiff's discovery requests were deliberately evasive, non-responsive, and in violation of

the Federal Rules of Civil Procedure 33, 34, and 26(g). Plaintiff filed this motion on August 8, 2019. Fact discovery ended on March 22, 2019. (Dkt. 33.) Expert discovery ended on June 25, 2019. (*Id.*) If Defendant DKB obstructed discovery, Plaintiff should have appealed to the Court while discovery continued, not after discovery ended. Plaintiff should have followed the Court's process for resolving discovery disputes, a process Plaintiff's counsel used at least once. (*See* Dkt. 77.)

The Court can award sanctions for the failure to disclose. *See* FED. R. CIV. P. 37(c). The Court finds sanctions inappropriate here. The Court denies Plaintiff's Motion for Sanctions.

## V.   Conclusion

The Court **GRANTS** Defendant Sur La Table's Motion for Summary Judgment (Dkt. 59), **GRANTS** Defendant DKB's Motion for Summary Judgment (Dkt. 79), and **DENIES** Plaintiff Harriet Sysyn's Motion for Sanctions (Dkt. 82). The Court **DENIES AS MOOT** Defendant Sur La Table's Motion to Exclude Plaintiff's Experts (Dkt. 64), Defendant Sur La Table's Motion to Dismiss (Dkt. 15), and Defendant DKB, Inc.'s Motion to Dismiss (Dkt. 11).

**SO ORDERED** this 5th day of December, 2019.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE